**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PREMIER INTERNATIONAL ASSOCIATES, LLC, <br><br> Plaintiff, <br> v. <br><br> DISH NETWORK CORPORATION, <br> DISH DBS CORPORATION, <br> DISH NETWORK L.L.C., <br> ECHOSTAR CORPORATION, and <br> ECHOSTAR TECHNOLOGIES L.L.C, <br><br> Defendants. | Civil Action No. _____ <br><br> **TRIAL BY JURY DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, PREMIER INTERNATIONAL ASSOCIATES, LLC, by its attorneys, hereby complains of Defendants DISH NETWORK CORPORATION, DISH DBS CORPORATION, DISH NETWORK L.L.C., ECHOSTAR CORPORATION, and ECHOSTAR TECHNOLOGIES L.L.C., as follows:

**I.**

**PARTIES**

1. Plaintiff, PREMIER INTERNATIONAL ASSOCIATES, LLC ("PREMIER") is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business located at 221 N LaSalle St, Chicago, Illinois 60601.

2. Defendant DISH NETWORK CORPORATION is a corporation organized and existing under the laws of the State of Nevada, with its principal executive offices located at 9601 S. Meridian Blvd., Englewood, Colorado 80112. DISH NETWORK CORPORATION

may be served with process by serving its registered agent CSC SERVICES OF NEVADA, INC., 2215-B Renaissance Dr., Las Vegas, Nevada 89119.

3. Defendant DISH DBS CORPORATION is a corporation established under the laws of the State of Colorado, with its principal executive offices located at 9601 S. Meridian Blvd., Englewood, Colorado 80112. DISH DBS CORPORATION may be served with process by serving its registered agent R. Stanton Dodge, 9601 S. Meridian Blvd., Englewood, Colorado 80112. DISH DBS CORPORATION is a wholly-owned subsidiary of DISH NETWORK CORPORATION.

4. Defendant DISH NETWORK L.L.C. is a limited liability company established under the laws of the State of Colorado, with its principal executive offices located at 9601 S. Meridian Blvd., Englewood, Colorado 80112. DISH NETWORK L.L.C. may be served with process by serving its registered agent Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, Illinois 62703. DISH NETWORK L.L.C. is a wholly-owned subsidiary of DISH NETWORK CORPORATION.

5. Defendants DISH NETWORK CORPORATION, DISH DBS CORPORATION and DISH NETWORK L.L.C. are collectively referred to herein as "DISH NETWORK."

6. Defendant ECHOSTAR CORPORATION is a corporation established under the laws of the State of Nevada, with its principal executive offices located at 100 Inverness Terrace East, Englewood, Colorado, 80112. ECHOSTAR CORPORATION may be served with process by serving its registered agent CSC SERVICES OF NEVADA, INC., 2215-B Renaissance Dr., Las Vegas, Nevada 89119.

7. Defendant ECHOSTAR TECHNOLOGIES L.L.C. a limited liability company established under the laws of the State of Texas, with its principal executive offices located at 100 Inverness Terrace East, Englewood, Colorado, 80112. ECHOSTAR TECHNOLOGIES

L.L.C. may be served with process by serving its registered agent R. Stanton Dodge, 9601 S. Meridian Blvd., Englewood, Colorado 80112. ECHOSTAR TECHNOLOGIES L.L.C. is a wholly-owned subsidiary of ECHOSTAR CORPORATION.

8. Defendants ECHOSTAR CORPORATION and ECHOSTAR TECHNOLOGIES L.L.C. are collectively referred to herein as "ECHOSTAR."

9. Defendant DISH NETWORK CORPORATION, through its subsidiary DISH NETWORK L.L.C., provides direct-to-home multichannel broadcast satellite subscription television service and satellite TV technology to more than 13.9 million satellite TV customers (as of December 31, 2011). (See Press Release dated March 15, 2012, available at: http://dish.client.shareholder.com/releasedetail.cfm?ReleaseID=657434 - last accessed on July 11, 2012.)

10. Defendant DISH NETWORK L.L.C.'s "Residential Customer Agreement" contains the following provisions:

> 4. **EQUIPMENT**
>
>   A. <u>Equipment</u>.  In order to receive Services you must purchase or lease certain reception equipment consisting primarily of a DISH Network compatible satellite receiver(s) and applicable Smart Card(s), remote control(s), satellite antenna(s), and sometimes low noise block converter feed(s) (LNBF) with integrated feed(s) (collectively, "Equipment").
>
> \*\*\*
>
>   D. <u>DVR</u>.  DISH Network's digital video recorder ("DVR") products allow you to record programming in digital format.  Total available recording time varies depending on your receiver and the nature of the programs being recorded.  DISH Network does not guarantee access to or recording of any particular programming or that any such programming will not be deleted from your DVR product.  Most programming is the copyrighted material of the third party that supplies it; is protected by copyright and other applicable laws; and may not be reproduced, published, broadcast, rewritten, or redistributed without the written permission of the third party that supplied it (except as permitted by the "fair use" provisions of the U.S. copyright laws).
>
> \*\*\*

F.  <u>Receiver Alterations</u>.  DISH Network may, through periodic downloads, alter the software, features and/or functionality in your DISH Network receivers; provide data and content to DVR products; store and remove data and content on the hard drives of DVR products; and send electronic counter-measures to your DISH Network receivers. DISH Network will use commercially reasonable efforts to schedule these downloads to minimize interference with or interruption to your Services, but shall have no liability to you for any interruptions in Services arising out of or related to such downloads. DISH Network may from time to time cease supporting one or more DISH Network receiver models.

***

| Type of Fee | Amount | Description of When Fee Applies |
|---|---|---|
| **Monthly Fees** | | |
| Additional Receiver Fee* (*In determining the Additional Receiver Fee amount, the receiver with the highest associated fee shall be deemed activated prior to all other receivers on your account.) | $7.00 | You have more than one (1) receiver on your account. Per additional high definition (HD) receiver. |
| | $10.00 | You have more than one (1) receiver on your account. Per additional DVR receiver. |
| | $14.00 | You have more than one (1) receiver on your account. Per additional Duo receiver. |
| | $17.00 | You have more than one (1) receiver on your account. Per additional DuoDVR or SlingLoaded receiver. |
| Receiver Fees | $7.00 | You have a Hopper 2000 receiver on your account. |
| | $7.00 | You have a Joey 1.0 receiver on your account. |
| Whole Home DVR Service Fee | $4.00 | You have a Whole Home DVR Hopper 2000 on your account. |
| DVR Service Fee | $6.00 | You purchase or lease a digital video recording receiver and you do not subscribe to a "with DVR" programming package. (If you have a HD Duo SlingLoaded DVR receiver on your account, a $10.00 fee will also apply). |

(Excerpts from "Residential Customer Agreement" which is available in its entirety at http://www.dish.com/legal/ - last accessed on July 11, 2012).

11.  Defendant DISH NETWORK L.L.C. also provides a "Digital Home Advantage Plan Agreement" to its satellite TV customers which contains the following provision:

> **Unreturned Equipment Charges:** The following "Leased Equipment" provided to you under this Agreement is leased and remains the property of DISH at all times: receiver(s); smart card(s); remote control(s); and LNBFs. You agree that you will return all Leased Equipment in accordance with the "Equipment Return" section below within 30 days following downgrade or disconnection of service, and if you do not, DISH will charge the following "**Unreturned Equipment Charges**" to your Qualifying Card, as applicable: LNBF, **$50**; all standard-definition receivers (301, 311, 322, 381, 512, 522, 625) and Joey 1.0, **$100**; high-definition (HD) non-DVR receiver (211, 211k, 222, 222k, 411), **$200**; HD DVR receiver (612, 622, 722, 722k), **$300**; and SlingLoaded™ DVR receiver (922) and Hopper 2000, **$400**. If your account is involuntarily deactivated for failure to pay your bill or otherwise, DISH will charge the applicable Unreturned Equipment Charge(s) to your Qualifying Card within 72 hours following deactivation. If you return the Leased Equipment in accordance with this Agreement, such Unreturned Equipment Charge(s) will be refunded upon DISH's receipt of the applicable Leased Equipment.

(Excerpt from a sample agreement with the filename "5.21.12 DHA24 Agreement Final Web (04.23.12)" which is available in its entirety at http://www.dish.com/legal/ - last accessed on July 11, 2012).

12.  Defendant DISH NETWORK CORPORATION states in its 2011 Annual Report that: "We rely on EchoStar Corporation, or EchoStar, to design and develop all of our new set-

4

top boxes and certain related components, and to provide transponder capacity, digital broadcast operations and other services to us." (See DISH NETWORK CORPORATION 2011 Annual Report, page i, available at: http://dish.client.shareholder.com/annuals.cfm - last accessed on June 20, 2012.)

13. Defendants DISH NETWORK CORPORATION and ECHOSTAR CORPORATION entered into a "2012 Receiver Agreement," effective January 1, 2012, pursuant to which DISH NETWORK CORPORATION has the right, but not the obligation, to purchase digital set-top boxes from ECHOSTAR CORPORATION for the period from January 1, 2012 to December 31, 2014. (See DISH NETWORK CORPORATION Form 8-k report filed on January 6, 2012 – available at: http://dish.client.shareholder.com/secfiling.cfm?filingID=1001082-12-1 and ECHOSTAR CORPORATION Form 8-k report filed on January 6, 2012 – available at: http://sats.client.shareholder.com/secfiling.cfm?filingID=1415404-12-3 - last accessed on July 11, 2012.)

14. Defendant ECHOSTAR CORPORATION states in its 2011 Annual Report:

**Our Customers**

Historically, the primary customer of our EchoStar Technologies segment has been DISH Network. DISH Network accounted for 79.4%, 82.8% and 81.9% of our total EchoStar Technologies segment revenue for the years ended December 31, 2011, 2010 and 2009, respectively. Bell TV, a DTH satellite service provider in Canada, accounted for 12.3%, 9.8% and 11.7% of our total EchoStar Technologies segment revenue for the years ended December 31, 2011, 2010 and 2009, respectively. Furthermore, Dish Mexico accounted for 4.0%, 3.9% and 2.1% of our total EchoStar Technologies segment revenue for the years ended December 31, 2011, 2010 and 2009, respectively. We also currently sell our digital set-top boxes to other international DTH satellite and cable providers such as Unitymedia GmbH, although these customers do not account for a significant amount of our total EchoStar Technologies segment revenue.

We expect to continue to rely on DISH Network as the primary customer of our EchoStar Technologies segment and for the substantial majority of our total EchoStar Technologies segment revenue. Effective January 1, 2012, we entered into a new receiver agreement with DISH Network pursuant to which we are obligated to sell digital set-top boxes and related products to DISH Network until December 31, 2014. However, DISH Network is under no obligation to purchase our digital set-top boxes or related products before or after this date. The receiver agreement allows DISH Network to purchase digital set-top boxes, related accessories and other equipment from us either: (i) at a cost (decreasing as we reduce cost and increasing as costs increase) plus a dollar mark-up which will depend upon the cost of the product subject to a collar on our mark-up; or (ii) at cost plus a fixed margin, which will depend on the nature of the equipment purchased. Under the receiver agreement, our margins will be increased if we are able to reduce the costs of our digital set-top boxes and our margins will be impaired if these costs increase.

***

**Our Manufacturers**

Although we design, engineer and distribute digital set-top boxes and related products, we are not directly engaged in the manufacturing process. Rather, we outsource the manufacturing of our digital set-top boxes and related products to third parties who manufacture our products according to specifications supplied by us. We depend on a few manufacturers, and in some cases a single manufacturer, for the production of digital set-top boxes and related products. Although there can be no assurance, we do not believe that the loss of any single manufacturer or supplier would materially impact our business. Sanmina-SCI Corporation and Jabil Circuit, Inc. currently manufacture the majority of our digital set-top boxes.

(Excerpts from ECHOSTAR CORPORATION 2011 Annual Report, pp. 3-4, which is available in its entirety at: http://sats.client.shareholder.com/financials.cfm - last accessed on July 11, 2012.

## II.

## JURISDICTION AND VENUE

15. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*. This Court has personal jurisdiction over Defendants because they have committed acts giving rise to this action within Illinois and this judicial district and have established minimum contacts within the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

16. Venue properly lies in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b), because Defendants have committed acts within this judicial district giving rise to this action, and Defendants "reside" in this District as they are subject to personal jurisdiction in this District. Venue is also appropriate because Defendants are doing business in this judicial district, including one or more of the infringing acts of offering for sale, selling, using infringing products, or providing service and support to Defendant's customers in this District and they do so through established distribution channels. Furthermore, PREMIER is a resident of Illinois.

### III.

### CLAIMS

17. PREMIER realleges and incorporates by reference the allegations set forth in Paragraphs 1-16 above as if fully set forth herein.

18. On June 5, 2001 United States Patent Number 6,243,725 ("the '725 Patent") entitled "List Building System" was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") to James D. Hempleman, Sandra M. Hempleman and Neil A. Schneider. A true and correct copy of the '725 Patent is attached hereto as **Exhibit A**.

19. On December 8, 2006, Apple Computer, Inc. filed with the United States Patent and Trademark Office ("USPTO") a "Request for Ex Parte Reexamination of U.S. Pat. No. 6,243,725" under Control No. 90/008,361 ("the '725 Reexamination").

20. On March 31, 2009, the USPTO issued an Ex Parte Reexamination Certificate for the '725 Patent ("the '725 Reexam Certificate"). During the '725 Reexamination, claims 1-114 of the '725 Patent were cancelled and new claims 115, 116 and 117 were added and determined to be patentable. The '725 Reexam Certificate issued with claims 115, 116 and 117, a true and correct copy of which is attached hereto as **Exhibit B**.

21. PREMIER is the assignee of the '725 Patent and holds the rights to sue and recover for past, present and future infringement thereof.

22. On May 2, 2012, PREMIER provided notice to DISH and ECHOSTAR of the '725 Patent and the claims in the '725 Reexam Certificate.

23. DISH NETWORK has been and is now infringing, directly and indirectly by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, the '725 Patent in the State of Illinois, in this judicial district and elsewhere in the United States by, among other activities, making, using, importing, offering for sale, selling,

providing, maintaining and/or supporting, without license or authority, products falling within the scope of one or more claims of the '725 Patent. Such products include, without limitation, DISH-branded DVRs (including resident firmware and software), such as, for example, Whole Home DVR Hopper 2000, DuoDVR ViP 722k, DuoDVR 625, SoloDVR ViP 612, and SoloDVR 512, which are provided to DISH NETWORK's satellite TV subscribers and which allow these subscribers to record and store television programming in digital format. In particular, the DISH-branded DVRs allow subscribers to designate at least one distinguishing feature, i.e., characteristic, for a (recorded) program, and in response to the user's designation the DISH-branded DVRs will list the recorded programs that match the designated feature, and sort the listed recorded programs by the date the programs were recorded. The DISH-branded DVRs infringe at least claim 115, and likely other claims, of the '725 Patent.

24.     ECHOSTAR has been and is now infringing, directly and indirectly by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, the '725 Patent in the State of Illinois, in this judicial district and elsewhere in the United States by, among other activities, making, using, importing, offering for sale, selling, providing, maintaining and/or supporting, without license or authority, products falling within the scope of one or more claims of the '725 Patent. Such products include, without limitation, DISH-branded DVRs (including resident firmware and software), such as, for example, Whole Home DVR Hopper 2000, DuoDVR ViP 722k, DuoDVR 625, SoloDVR ViP 612, and SoloDVR 512, which are provided to DISH NETWORK's satellite TV subscribers and which allow these subscribers to record and store television programming in digital format, as well as non-DISH-branded DVRs having the same or equivalent functionality. In particular, the DISH-branded DVRs allow subscribers to designate at least one distinguishing feature, i.e., characteristic, for a (recorded) program, and in response to the user's designation the DISH-branded DVRs will list the recorded

programs that match the designated feature, and sort the listed recorded programs by the date the programs were recorded. The DISH-branded DVRs infringe at least claim 115, and likely other claims, of the '725 Patent.

25. DISH NETWORK has also been inducing infringement of the '725 Patent, literally or under the doctrine of equivalents, under 35 U.S.C. §271(b) by intentionally and knowingly inviting and instructing the users of DISH-branded DVR products on how to use said products to directly infringe the claimed system. See, for example, page 56 of the DISH NETWORK Hopper Whole-Home HD DVR System User Guide (available at http://www.mydish.com/Support/manuals, last accessed on July 11, 2012), and excerpt of which is reproduced below:

## GROUPING AND SORTING RECORDINGS

1. Press the DVR button (or press MENU, and then select DVR).
2. Choose a group or sort option to help you quickly find the program you want to watch:
   - To group programs into folders, select **Folders by Title**, then select another option, like **Folders by Genre**, **My Folders** or **No Folders**.
   - By default, recordings are sorted by date. To sort them by name (**A-Z**) or rating categories, select **DVR Date**, and then choose an option.

The My Recordings list re-arranges itself to match your sorting or grouping selection(s).

26. DISH NETWORK and ECHOSTAR have committed acts of infringement which have caused damage to PREMIER. Under 35 U.S.C. § 284, PREMIER is entitled to recover from each of the Defendants the damages sustained by PREMIER as a result of their infringement of the '725 Patent. Each of the Defendants' infringement on PREMIER's exclusive rights under the '725 Patent will continue to damage PREMIER causing irreparable harm, for which there is no adequate remedy of law, unless enjoined by this Court under 35 U.S.C. § 283.

27. To the extent that facts learned in discovery show that DISH NETWORK's and ECHOSTAR's infringement of the '725 Patent is, or has been willful, PREMIER reserves the right to request such a finding at the time of trial.

## IV.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMIER respectfully requests that this Court enter judgment against Defendants DISH NETWORK CORPORATION, DISH DBS CORPORATION, DISH NETWORK L.L.C., ECHOSTAR CORPORATION, and ECHOSTAR TECHNOLOGIES L.L.C. as follows:

(a) for declaration that United States Patent No. 6,243,725 is good and valid in law;

(b) for judgment that Defendants have infringed and continue to infringe the '725 Patent;

(c) for preliminary and permanent injunctions under 35 U.S.C. § 283 against Defendants and their respective directors, officers, employees, agents, subsidiaries, parents, attorneys, and all persons acting in concert, on behalf of, in joint venture, or in partnership with any of the Defendants thereby enjoining any further acts of infringement;

(d) for damages to be paid by Defendants adequate to compensate PREMIER for their infringement, including interest, costs and disbursements as justified under 35 U.S.C. 284; and

(e) for such further relief at law and in equity as the Court may deem just and proper.

## V.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure Rule 38, Plaintiff PREMIER hereby demands a jury trial on all issues triable by jury.

Dated: August 3, 2012                             Respectfully submitted,

/s/Jeffrey R. Moran
Jeffrey R. Moran

Joseph M. Vanek
IL State Bar No. 6197046
Thomas A. Vickers
IL State Bar No. 6226288
Jeffrey R. Moran
IL State Bar No. 6283573
John P. Bjork
IL State Bar No. 6299111

**VANEK, VICKERS & MASINI, P.C.**
111 S. Wacker Drive, Suite 4050
Chicago, Illinois 60606
(312) 224-1500 Telephone
(312) 224-1510 Facsimile
E-mail: jvanek@vaneklaw.com
E-mail: tvickers@vaneklaw.com
E-mail: dgermaine@vaneklaw.com
E-mail: jmoran@vaneklaw.com

*Attorneys for Plaintiff*
*Premier International Associates, LLC*